Filed 1/27/15  Abel v. Diamantides CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ARGY D. ABEL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LINDA DIAMANTIDES et al.,<br><br>    Defendants and Respondents. | B252479<br><br>(Los Angeles County<br>Super. Ct. No. NP013993) |

APPEAL from an order of the Superior Court of Los Angeles County, Roy L. Paul, Judge.  Affirmed.

Argy D. Abel, in pro. per., for Petitioner and Appellant.

No appearance for Defendants and Respondents.

_____

Argy D. Abel appeals from orders enforcing a settlement between Abel and her siblings, Linda and Nicholas Diamantides, regarding the trust of their mother, Vassiliki ("Bessie") Diamantides. In the absence of an adequate record, we affirm.

On June 9, 2010, Abel, in propria persona,[1] filed a petition for an order enforcing the provisions of a revocable living trust. The petition alleged that Bessie died on February 18, 2010, leaving four children, Linda, Nicholas, Danny[2] (who was disabled and under a conservatorship), and Abel (who was Danny's conservator). The petition detailed disputes between the siblings regarding amendments to a trust Bessie had signed on April 30, 1996, and contained allegations of misconduct by Nicholas and Linda regarding Bessie's care and finances. Abel requested an order declaring that the trust was valid as modified by a third amendment signed March 13, 2007. The third amendment appointed a third party as trustee on Bessie's death and revoked a second amendment to the trust dated June 23, 2006. The second amendment provided (among other provisions) that Nicholas and Linda would serve as co-trustees after Bessie's death, that Linda would receive the Palm Springs property, and Abel, Nicholas, and Danny would receive equal shares in the Long Beach property, with a trust to be established for Danny. Abel's petition also requested that Abel be named as trustee, a full accounting from Linda and Nicholas of money they allegedly took from the trust, and a return of the funds. Nicholas and Linda, represented by counsel, filed an objection to the petition which alleged that the third amendment to the trust was the result of undue influence, fraud, duress, and menace by Abel, and requested an order enforcing the trust pursuant to the second amendment (which in turn revoked a first amendment dated March 4, 2003) and also requested that Nicholas and Linda be named as trustees. Abel filed a reply.

---

[1] A supplement to her petition states that Abel consulted with an attorney regarding the preparation of the supplement, but "to minimize attorney's fees . . . [Abel] has not retained her attorney as the attorney-of-record" for the purpose of appearance.

[2] We refer to all the Diamantideses by their first names for the sake of clarity, intending no disrespect.

2

After a final status conference on February 23, 2011, the case came on for trial on February 28, 2011.  The trial court gave the parties 15 minutes to resolve the issues before trial (noting that counsel for Linda and Nicholas, contrary to the court's earlier order, had filed a trial brief with "no law whatsoever," and complimenting Abel on her "very well-written" 17-page brief).  The parties returned 55 minutes later and stated they had reached a resolution; all four children were present. Counsel for Nicholas and Linda stated:  "The parties agreed that the petition will be dismissed.  That Mr. Nicholas Diamantides is going to take nothing from the estate.  He is walking away from it.  That Linda Diamantides and Argy Diamantides [Abel] will serve as successor trustors or trustees to sell the Marshall Place property here in Long Beach.  Linda Diamantides will take title to the property in Palm Springs.  The proceeds from the sale of the Marshall Place Property will be used to pay the estate debts.  [¶]  Also, the parties agreed that past attorney's fees incurred by Ms. Diamantides [Abel] would be paid, as well as my clients' attorney's fees and all medical bills and any remaining last expenses and so forth, most of which have already been paid out of the joint account that Linda Diamantides succeeded to upon Mrs. Diamantides' death.  She has used that money for that purpose.  There is about $27,000 left in those combined accounts.  That money will be used toward expenses on getting the property sold . . . [¶] . . . [¶]  So the attorneys' fees will be paid and that all of Danny's monies will be put into a trust that will be managed by both sisters as co-trustees."  Asked by the court, "did you hear the agreement as recited on the record?," Abel said, "Yes;" asked, "Do you understand it?," she repeated "Yes;" and asked, "Do you agree to it?," she answered, "Yes, I do."  Nicholas and Linda's attorney added:  "Mr. Diamantides [Nicholas] will have until June 1st to move out of the Marshall Place residence.  If the sisters agree, he may stay there longer if it helps with respect to selling the property."  The court rejoined:  "We will clarify all those things because you are going to prepare this in the form of an order that is—let's see, you are going to have to get a copy of this transcript to make sure that you get all of these down."  The court then turned to Abel:  "Now, you agree, Ms. Abel Diamantides, that the court will retain jurisdiction to enforce the terms and provisions of this agreement?  That means I am

3

going to keep the power to enforce it. [¶] Do you agree to that?" Abel answered, "Yes." Linda and Nicholas also agreed to the terms and conditions and the court's power to enforce the settlement.

The court asked the parties to specify the amount of attorney fees and money needed for the repairs, and clarified that Abel understood that a debt Nicholas owed to the estate and back rent on the Long Beach house would be waived, as Nicholas was waiving his interest. The parties discussed necessary home repairs and the necessity for Abel and Linda to work together as co-trustees. Abel stated her fees were about $12,000, and the court stated that the parties should receive equal fee amounts for a total of about $30,000. The court told the parties to indicate that repairs would come from the sums now in the accounts, and the fees would be paid from the sale of the house. As to outstanding medical bills, Linda stated they had received bills stating that Bessie's health insurance had been cancelled, including one for $12,000. The court told the parties to work together to identify the amount owed for the record. Abel agreed to withdraw her petition, and Linda and Nicholas agreed to withdraw their objection. The court then asked Abel, "[I]f you are withdrawing your petition to enforce, then there is nothing before the court once you enter into this final resolution in just a few minutes," and Abel agreed. The court explained that the parties "are going to put it in writing . . . . [¶] It is subject to the court enforcing it because I am reserving the jurisdiction to enforce it." Abel agreed. The court repeated, "Once we put this on the record, subject to submitting something for enforceability," the case was closed, and added, "This is gone." Abel indicated that she understood. The court added, "It is clear that the money is going to be held in trust for Danny, who is present." The parties agreed that the trust provided that should something happen to Danny, his share would be divided between the three other siblings. Abel was currently the conservator of Danny's person, and Linda and Abel agreed they would be joint conservators of Danny's estate.

After another adjournment, the parties returned to the court later that afternoon and clarified that up to $25,000 would be spent on repairs, and that upon sale of the house, Abel would receive $15,000 in attorney fees and Linda would receive $30,000.

4

Abel asked that the $30,000 come out of the proceeds before division; the court ordered the parties to leave and decide how to handle the fees. After a brief adjournment, the parties returned and stated they had reached an agreement that $20,000 in fees for Linda and $15,000 in fees for Abel would come off the top of the sale of the property, and then Linda would pay $5,000 more to her counsel.

The court stated: "I will expect to see this prepared in writing, signed by the parties. This is effective today regardless of whether you sign anything. [¶] . . . [¶] It is all on the record. [¶] . . . [¶] We just need this to me signed by the parties, approved as to form and content. . . . It is not a difficult one. [¶] [T]his case is settled in its entirety. We are reserving jurisdiction pursuant to 664.6[3] for enforceability. The petition has been dismissed and the objections are dismissed. It is being done today, but we are reserving jurisdiction until I get that judgment to be signed or that document to be signed. . . . [¶] [T]his is not very many lines to do all this. A page or two. . . . It is not complicated. You know what the issues are." The court added, "Your co-trustee stuff, about co-trustees and all future agreements are going to be by the two of you."

Abel's appellant's appendix does not include the minute order from the February 28, 2011 trial date. The appendix contains no transcripts of any court proceedings after February 28, 2011.

Counsel for Nicholas and Linda drafted an eight-page "Stipulation and Order Re: Settlement." The Stipulation and Order in the record provided signature lines for Abel, Linda, and Nicholas, but is not signed. Instead, on April 22, 2011, Abel filed a motion to rescind the settlement agreement and to set a trial date, arguing that her consent had been obtained by fraud and mistake, that the agreement incorporated terms not agreed to and omitted agreed-upon conditions, and that Nicholas and Linda had engaged in behavior

---

[3] California Code of Civil Procedure section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

5

that did not comply with the agreement. Her attached declaration stated the terms of the settlement reached in court and then stated, "I did not see this as a fair settlement offer," listing a series of conditions that she proposed before she would accept the settlement. Abel acknowledged "the agreement is binding without the signatures," but also stated: "I made the mistake of letting my guard down, allowing the Objectors to set me up. If there is any doubt as to the invalidity of the subject settlement agreement or the Objectors' intent, I have 139 post-settlement exhibits that speak for themselves." Abel attached as an exhibit a list of eight additional terms she proposed inserting into the agreement. In a supplemental declaration, she stated that she had been induced to enter into the agreement by promises that Linda and Nicholas had not kept.

Linda and Nicholas filed an opposition, stating that after settling in court, they learned that before Abel filed the petition she transferred the Long Beach home to herself. The opposition recited the terms of the settlement agreement (omitting "usual and customary terms of settlement which are not repeated herein since [Abel] objected to their inclusion") and explained how any included terms not specifically recited on the transcript were required to implement the agreement. Linda and Nicholas requested that the court enter an order and judgment confirming the settlement agreement and ordering Abel to transfer the property back to the trust.

A minute order after hearing dated June 21, 2011 denied Abel's motion to rescind the agreement, suspended Linda as co-trustee, and ordered $25,000 placed in a trust bank account for repairs to the Long Beach house. The minute order reflects that Abel was given the house key in open court, Nicholas allowed Abel to dispose of whatever remained in the house, and Abel was to pay back bills and taxes on the property from the $25,000, with future bills to be paid by Abel. Abel as trustee was to secure two bids for repairs and contact a real estate broker, and prepare a reconciliation of medical bills for respondent's counsel. On July 7, 2011, an order appointed Abel as trustee and authorized her to open a checking account in the name of the trust.

On April 11, 2012, the court issued a minute order stating that "having further reviewed the previous transcript from the settlement, [the court] reconsiders its ruling,"

6

and ordered counsel for Linda and Nicholas to prepare two orders for the court's signature. One order was to set forth the terms of the settlement, and the other "will include orders made on April 11, 2012." Abel's appendix does not contain any record of the orders made on April 11, 2012.

On June 8, 2012, the court signed an "Order Enforcing Settlement Entered on Record of the Court on 2/28/11," and "Supplemental Order Enforcing Settlement Post 4/11/12 Status Hearing."

Abel filed an opposition to the two June 8, 2012 orders, signed June 18, 2012. Abel filed a motion to set aside the two orders on October 22, 2012. Counsel for Linda and Nicholas filed an opposition to the motion to set aside and a request for enforcement. Abel's motion to set aside was denied without prejudice on November 14, 2012. No minute order for November 14, 2012 appears in Abel's appendix, and she did not include a reporter's transcript.

On February 23, 2013, Abel signed a petition to correct the June 8, 2012 orders. On April 25, 2013, the court continued the matter, struck the introduction to Abel's points and authorities, ordered subpoenaed police records to be destroyed, and stated that Abel accepted $5000 in lieu of any outstanding bills. On April 26, 2013, the court entered a minute order stating: "After hearing from counsel and the parties, Court finds [the two orders entered June 8, 2012] stand as the orders of the court. Court declines to make any corrections with exception of item 2 on page 2 of the Supplemental Order . . . which is stricken. Court deems words 'equal share' as 50% between [Abel] and sibling Danny Diamantides. Order of payment of $5,000.00 in lieu of unpaid medical bills was stipulated to April 25, 2013." Abel does not include the reporter's transcripts for the April 2013 hearings in the record.

Abel filed a timely appeal from the April 26, 2013 order, requesting only the reporter's transcript of the February 23, 2011 and February 28, 2011 hearings.

## DISCUSSION

Abel's 48-page brief repeats the many assertions and objections she made during this contentious family dispute, in her failed attempts to rescind the settlement agreement

7

and to set aside the June 8, 2012 orders enforcing the settlement. She asks us to find there was no enforceable agreement, to find the agreement void, and to remand for trial. She argues that the agreement must be rescinded because the court had stated at the February 28, 2012 hearing that the written agreement would be provided to the court as signed by the parties; because the orders signed on June 8 went beyond the terms placed on the record at the February 28, 2011 hearing; and because the settlement agreement she entered into on February 28, 2011 was induced by material misrepresentations and fraud. She also makes many allegations about postsettlement behavior by respondents Nicholas and Linda, who have not filed a brief in this case.

Abel, the party challenging the orders enforcing the settlement, has the burden to show reversible error with an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) We presume a judgment of the trial court is correct, and "'[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent.'" (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.) In the absence of a proper record on appeal, we must affirm the judgment. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

Abel has not included in her record on appeal any transcripts after February 28, 2011, when the parties reached the initial settlement agreement. She has not provided transcripts of the June 26, 2011 hearing at which the court denied Abel's motion to rescind the agreement. Nor are there transcripts of the April 11, 2012 hearing at which the court directed the parties to prepare the order and the supplemental order enforcing the settlement (although Abel states in her brief that she has a copy "should the Court decide to include it as part of the record on appeal"). The record also lacks any record of the orders made at the April 11, 2012 hearing which were to be the subject of the supplemental order. The court signed the order enforcing the settlement and the supplemental order enforcing the settlement on June 8, 2012. There is no minute order or reporter's transcript of the November 14, 2012 denial without prejudice of Abel's motion to set aside the orders. On April 26, 2013, after hearing, the court let the orders stand as the orders of the court, striking one item and defining terms. Again, the appellate record

8

does not contain any reporter's transcripts from the April 26 hearing. Without a reporter's transcript, which might reveal the parties' arguments to the court and any concessions concerning facts, issues, or evidence, Abel cannot meet her burden to show reversible error. In the absence of such a record, we indulge all inferences to support the order she challenges, and we presume the trial court properly concluded that the June 8, 2012 orders reflected the February 28, 2011 settlement.

We recognize that Abel is representing herself on appeal, as she did in the trial court (where the judge complimented Abel on the quality of her filings). Nevertheless, parties appearing in propria persona are not entitled to special treatment. (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524.) Abel asks us to determine, in direct opposition to all the rulings by the trial court, that no settlement agreement was reached at the February 28, 2011 hearing because she was induced into settling by fraud and misrepresentations not reflected in the transcript of that hearing. The allegations Abel made in her subsequent filings (and which she repeats on appeal), involve Nicholas and Linda's behavior (including toward Danny) after February 2011, the subsequent condition of the Long Beach property, and many other allegations we do not detail here. In essence, she reargues her entire case on an inadequate record. The court repeatedly rejected Abel's arguments seeking to invalidate the settlement, and as no error appears on the face of the limited record before us, we presume the unreported testimony would demonstrate the absence of error. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 153–154.) In rejecting her challenges to the settlement and the orders enforcing it, the trial court necessarily determined that her allegations, to the extent they are relevant, were not credible. Abel's credibility is not a matter we may reconsider on appeal. (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.) Therefore there can be "no question of the sufficiency of the evidence to support the [trial court's] findings." (*Haskins v. Holmes* (1967) 252 Cal.App.2d 580, 582.)

Although in the absence of reporter's transcripts or a suitable substitute, we do not reach the merits of Abel's claims (see *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187), we note that the order enforcing the settlement which

the court signed on June 8, 2012 contains the basic terms of the settlement placed on the record on February 28, 2011. The order states that Nicholas and Linda signed the original stipulation regarding the settlement, but Abel did not, and instead filed her motion to rescind. The order acknowledges that subsequent orders appointed Abel trustee, and that any subsequent orders would have no effect on the agreement that the assets remaining in the trust were to be placed in a segregated account for Danny's benefit, and administered by Linda and Abel as cotrustees. The order provides that Nicholas waives all bequests and shall take nothing from the trust except upon the death of Danny, and that Nicholas's debt to the trust and the back rent on the Long Beach property was forgiven. The proceeds from the Long Beach property (which had been sold) were to be used for the estate debts. Abel was to receive $15,000 for attorney fees from the sale proceeds, and Nicholas and Linda's counsel was to receive $20,000, with an additional $5,000 paid by Nicholas and Linda. Half of the Long Beach proceeds remaining were to be distributed to Abel, and the other half was to be held in trust for Danny, to be managed by Abel and Linda as co-trustees. Upon Danny's death, any remaining trust funds were to be equally distributed to the three siblings. Linda was to receive the Palm Springs property, and was to pay out of the joint account she held with Bessie $25,000 for the repair bills for the Long Beach property, with the money to go to Abel for payment of the bills (the money had already been sent, received, and deposited by Abel). These terms are consistent with the court's statements on the record on February 28, 2011.

## DISPOSITION

The order is affirmed.  Respondents are awarded costs on appeal.

NOT TO BE PUBLISHED.


                                        JOHNSON, J.


We concur:


        CHANEY, Acting P. J.


        BENDIX, J.*

---

        * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.